

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable J. C. Voyles
Assistant County Attorney
Jefferson County
Beaumont, Texas

Dear Sir:

Opinion No. O-4002
Re: Arrests - searches without
warrant - probable cause -
fees.

Your request for opinion has been received and carefully considered by this department. We quote from your request as follows:

"Several questions have arisen in this county relative to the proper procedure to be followed with reference to the checking of trucks for the purpose of ascertaining whether or not the registration papers are being carried in the trucks at all times, as required by Article 827a, Sec. 5, P. C. 1936, and also for the purpose of ascertaining whether or not the drivers of said trucks have chauffeurs licenses, as required by law, and the legality of the procedure being followed by the police officers of this county in making these routine checks.

"So that you may be more familiar with the questions that have arisen we will state a case, which we believe involves every point on which we will ask your opinion:

"A deputy constable stations himself on one of our busiest thoroughfares, the same being a State highway between the cities of Beaumont, Texas, and Port Arthur, Texas, and flags down each and every truck or commercial motor vehicle passing along said highway. (It

will be noted here that these trucks and
commercial motor vehicles are not openly
violating any of the laws of this State,
such as speeding, running without suffi-
cient clearance lights, etc., but are be-
ing stopped for the sole purpose of a rou-
tine check to see if the registration papers
are in the trucks and whether or not the
drivers are in possession of a chauffour's
license to operate the same).

"After the truck is stopped it is
searched to see whether the registration
papers are in the same and the driver is ask-
ed whether or not he has a chauffour's
license. If the registration papers are
not in the truck, or if the driver does
not have a cheuffeur's license, as required
by law, then and in that event the driver
is given a ticket, such as is given in
speeding cases, requiring the driver to
appear at a named Court, on a particular
date. The officer making the arrest then
goes into the Justice Court and in several
instances the driver of the motor vehicle,
who has been given a ticket, appears in
Court on the date named therein, enters
his plea of guilty and pays his fine and
costs. In some instances no warrant of
arrest is ever issued by the Justice of the
Peace and in some instances the Justice
does not issue a subpoena for the witnesses.
It is often the case that when the defendant
appears he pleads guilty before the Justice
of Peace in the absence of the arresting
officer or any other witness or witnesses.

"The questions arising out of the above
state of facts, and on which your opinion
is requested, are:

"(1)  Does a Sheriff, Deputy Sheriff,
Constable, Deputy Constable, City Police
Officer or Highway Patrolman have the
legal right to stop any motor vehicle,
be it a commercial motor vehicle or
otherwise, unless the driver of said

Honorable J. C. Voyles, Page 3

motor vehicle is openly violating some
law in view of the arresting officer,
or unless the arresting officer has
probable cause to stop the same and
search the vehicle to ascertain whether
or not registration papers are being
carried, as required by Article 827a,
Sec. 5, P. C. 1938?

"Our Opinion:

"We find no provision in the law giving
any of the Peace Officers named above the
legal right to stop any motor vehicle unless
they have probable cause or unless a driver of
the same is violating some law in their pre-
sence, such as speeding, running without clear-
ance lights, etc. In Cornelius on Search and
Seizure, Second Edition, Pages 41-42, the
author uses these words:

"'Without a doubt, the abolition of
constitutional restraints against un-
reasonable searches and seizures would
be of assistance in detecting and appre-
hending violators of law — something
greatly to be desired. But, on the
other hand, if officers of the law
were given unlimited license to search
persons, homes, offices, automobiles,
and effects whenever they desire, the
nation would be saddled with a nuisance
of the first magnitude, which, in it-
self, would tend to bring all laws in-
to disrepute. If, for example (as has
frequently been the case), an over-
zealous officer should station himself
on one of our trunk highways, over which
thousands of automobiles travel each day,
stop every car and search the occupants,
greatly to the annoyance and humiliation
of many innocent people, would not such
a practice tend to bring unnecessary pre-
judice and odium upon the law itself?'

9

"Therefore, in our opinion Police officers have no legal right to stop trucks, motor vehicles or passenger cars in the way outlined above.

"(2) Does any Peace Officer, and more especially those named above, have the right under the law as it is now written to give a ticket wherein the driver of the motor vehicle is required to appear in Court at a later date, except the violation for speeding?

"Our Opinion:

"We find no provision for this procedure in the Statutes for any violation of the highway laws other than speeding. Article 792 P. C. reads as follows:

"'In case of any person arrested for violation of the preceding articles relating to speed of vehicles, unless such person so arrested shall demand that he be taken forthwith before a Court of competent jurisdiction for an immediate hearing, the arresting officer shall take the license number, name and make of the car, the name and address of the operator or driver thereof, and notify such operator or driver in writing to appear before a designated Court of competent jurisdiction at a time and place to be specified in such written notice ***'.

"This Article, in our opinion, clearly states that a notice to appear only applies in speeding cases.

"(3) If a ticket is given for any violation of the traffic laws of this State, other than for speeding, to appear in Court at a named date therein and the driver fails to and refuses to come into Court on said date, will his failure to appear in Court be the basis of the filing of another complaint for failure to appear?

"Our Opinion:

"If we are correct in our opinion on Question No. 2 above, then it is our opinion that the failure of the driver to appear at a named date would not and could not be the basis of the filing of another complaint for failure to appear.

"(4) If a ticket is given, in a case in which the defendant is charged with a traffic law violation, other than for speeding, and the arresting officer files his complaint in the Justice Court and no warrant of arrest is issued thereon, but the defendant appears in Court on a named date and enters his plea of guilty, is the arresting officer entitled to an arrest fee?

"Our Opinion:

"If we are correct in our opinion on Question No. 2, that is, that the arresting officer has no right to give a ticket for any traffic law violation, other than for speeding, then it is our opinion that the arrest is illegal, and inasmuch as no warrant of arrest is issued the Justice of Peace could not charge for the same, nor would the arresting officer be entitled to an arrest fee.

"(5) If the defendant appears in Court, in response to a ticket given to him for any traffic law violation, other than speeding, and the arresting officer also appears in Court at the same time, and no subpoena has been issued by the Justice of the Peace requiring the presence of the arresting officer, or any other witnesses, would the arresting officer, merely by his presence in Court, be entitled to a witness fee, even though he was ready and willing to testify in the case?

Honorable J. C. Voyles, Page 6

"Our Opinion:

"In our opinion the arrest was illegal,
no subpoena having been issued requiring the
presence of the arresting officer, or any
other witness, his mere presence in Court
would not entitle him (the arresting officer)
to a witness fee, even though he stood ready
and willing to testify in the case. Arti-
cle 1080, Code of Criminal Procedure, reads
as follows:

"'No fees shall be allowed to a per-
son as witness fees unless such person
has been subpoenaed, attached or recog-
nized as a witness in the case.'

"(6) Under the facts stated in Ques-
tion 5, if the defendant is in Court
and has not before been served with a
warrant of arrest and a warrant of ar-
rest is in the officer's hands, can he
legally serve the defendant upon his
appearance in Court and then charge an
arrest fee therein?

"Our Opinion:

"If the warrant of arrest has been is-
sued and is in the hands of the officer, then
it is our opinion that he can serve the same
upon the defendant at that time, whether he
be in Court or at any other place.

"(7) If you hold that police offi-
cers do not have the right to stop
motor vehicles, as outlined in Question
No. 1, then and in that event would the
officer so stopping and searching the
trucks and other motor vehicles be
guilty of the offense of unlawful ar-
rest?

"Our Opinion:

"Article 1169, Penal Code, reads as follows:

"'False imprisonment is the wilful detention of another against his consent and where it is not expressly authorized by law, whether such detention be effected by an assault, by actual violence to the person, by threats or by any other which restrains the party so detained from removing from one place to another as he may see proper.'

"In view of this State it is our opinion that the officer would be guilty of the offense of false imprisonment in making the arrest as outlined in Question No. 1."

Section 5a of Article 827a, Vernon's Annotated Texas Penal Code, as amended by the Acts of 1941, 47th Legislature of Texas, reads as follows:

"Sec. 5a. Upon application for registration of any commercial motor vehicle, truck tractor, trailer or semi-trailer, the applicant shall deliver to the Tax Collector, or one of his duly authorized deputies, an affidavit, duly sworn to before an officer authorized to administer oaths, showing the weight of said vehicle, the maximum load to be transported thereon, and the total gross weight for which said vehicle is to be registered, which affidavit shall be kept on file by the Collector. The license receipt issued to the applicant shall also show said total gross weight for which said vehicle is registered. A copy of said receipt shall be carried at all times on any such vehicle while same is upon the public highway.

"The copy of the registration license receipt above required shall be admissible in evidence in any cause in which the gross registered weight of such vehicle is an issue, and shall be prima facie evidence of the gross weight for which such vehicle is registered. Such copy of the registration license receipt

shall be displayed to any officer authorized
to enforce this Act, upon request by such
officer.

"The driver, owner, operator, or other
person operating or driving such vehicle,
failing to comply with this provision of this
Act, shall be guilty of a misdemeanor and
upon conviction shall be fined in any sum
not exceeding Two Hundred ($200.00) Dollars."

Article 827a, Section 6, Vernon's Annotated Texas
Penal Code, as amended by the Acts of 1941, 47th Legislature
of Texas, reads as follows:

"Sec. 6. Any license and weight inspec-
tor of the Department of Public Safety, any
highway patrolman or any sheriff or his duly
authorized deputy having reason to believe
that the gross weight of a loaded vehicle is
unlawful is authorized to weigh the same by
means of portable or stationary scales fur-
nished or established by the Department of
Public Safety, or cause the same to be weigh-
ed by any public weigher, and to require
that such vehicle be driven to the nearest
available scales in the direction of destina-
tion, for the purpose of weighing. In the
event the gross weight of any such vehicle
be found to exceed the maximum gross weight
authorized by law, such license and weight
inspector, highway patrolman, sheriff, or his
duly authorized deputy shall demand and re-
quire the operator or owner thereof to un-
load such portion of the load as may be nec-
essary to decrease the gross weight of such
vehicle to the maximum gross weight authorized
by law. Provided, however, that if such load
consists of livestock, perishable merchandise,
or merchandise that may be damaged or destroy-
ed by the weather, then such operator shall
be permitted to proceed to the nearest prac-
tical unloading point in the direction of
destination before discharging said excess
cargo. The officers named herein are the
only officers authorized to enforce the pro-
visions of this Act."

Prior to its amendment in 1941, the above quoted statute read as follows:

"Art. 827a, sec. 6. Any license and weight inspector of the State Highway department, having reason to believe that the gross weight of a loaded vehicle is unlawful, is authorized to weigh the same either by means of portable or stationary scales, and to require that such vehicle be driven to the nearest scales in the event such scales are within two miles. The inspector may then require the driver or operator to unload immediately such portion of the load as may be necessary to decrease the gross weight of such vehicle to the maximum gross weight specified by this Act."

The courts have not yet construed the 1941 amendments to Sections 5a and 6 of Article 827a, supra. However, the courts have construed the above quoted sections which were in effect prior to the 1941 amendments.

The case of DeShong Motor Freight Lines, Inc. v. Hopkins, et al, 99 S1 W. (2d) 1033, held that a trucking company was entitled to an order restraining sheriff, deputy sheriff, highway officer, constables, deputy constables, and county attorney from arresting truck drivers and weighing and causing to be weighed trucks for the purpose of ascertaining whether they were loaded in excess of 7,000 pounds since the statute (then in force - 827a, sec. 6, prior to the 1941 amendment) conferred such authority on license and weight inspectors. The case of Head v. State, 96 S. W. (2d) 691, was cited in the court's opinion. In the Head case, the arrest was made by a constable whom Judge Morrow of the Texas Court of Criminal Appeals held was without authority to arrest without warrant, for refusal to drive truck to scales to ascertain whether the truck was overloaded, under statutes vesting peace officers with right to arrest without warrant if breach of the peace is being committed in officers' presence, the operation of an overloaded truck not being per se "a breach of the peace".

We quote from Judge Sharp's opinion (Texas Supreme Court) in the case of New Way Lumber Company v. Smith, 96 S. W. (2d) 290, as follows:

Honorable J. C. Voyles, Page 10

"The dominant purpose of the laws en-
acted on this subject is the safety of the
public from injury and loss of life through
the operation of motor vehicles on the pub-
lic highways. It is a matter of common
knowledge that many persons are injured, and
many lives lost, through the operation of
motor vehicles on the public highways. The
law also has for its reasonable purpose the
protection of the highways from the opera-
tion of overloaded trucks thereon! Under
the law, officers designated to enforce the
provisions thereof should have the right to
demand that operators of motor vehicles
show their permits issued by virtue of arti-
cle 911b, without a search warrant. If it
were necessary that a search warrant should
be required to obtain such information,
one of the main purposes of the law would
be nullified. If an officer authorized
to enforce the law approaches the driver
of a motor vehicle for the purpose of ascer-
taining if he has a permit to operate the
same on the public highways, and the driver
declines or refuses to show such permit, it
logically follows that the officer would have
probable cause to believe that the motor
vehicle is being operated on the public high-
ways in violation of law. Likewise, section
6, art. 827a, Vernon's Ann. P. C., authorizes
an inspector to stop a vehicle and weigh it,
if he has reason to believe that its load ex-
ceeds that allowed by law; and, if the load
is excessive, require the operator to reduce
it to the amount prescribed by the act. It
clearly appears that this section of the stat-
ute does not prohibit the use of motor vehi-
cles on the public highways, but is merely
a regulation of their use. Therefore, if
the officer should have probable cause to be-
lieve that a motor vehicle is being operated
without a permit, or that it is being oper-
ated with an unlawful load, he would have
the right, without a search warrant, to stop
the driver and question him about his right
to operate a motor vehicle upon the public

highways, and, if need be, ascertain whether
the operation of the motor vehicle is in
violation of law; and if such driver is oper-
ating the motor vehicle in violation of law,
arrest him without a warrant.  To hold
otherwise would render ineffective the rea-
sonable and wholesome laws enacted for the
protection of the public and the highways."

We quote from the case of Cook v. State, (Texas
Court of Criminal Appeals) 128 S. W. (2d) 48, as follows:

"We find from the testimony that this
inspector, after hearing this truck coming,
flashed his light and directed the appellant
to drive to the side of the road and be
weighed up] which the appellant readily
did, and after such weight had been ascer-
tained appellant agreed to drive into San
Marcos, a short distance away and be there
weighed on stationary scales, where the
same result was obtained.  That this in-
spector had authority so to do, we find to
be held by our Supreme Court in the case
of New Way Lumber Co. v. Smith, 128
Tex. 173, 96 S. W. 2d 282, and in an ex-
haustive opinion by Justice Sharp it is said
on page 290 of 96 S. W. 2d thereof:  'Like-
wise, section 6, art. 827a, Vernon's Ann.
P. C., authorizes an inspector to stop a
vehicle and weigh it, if he has reason to
believe that its load exceeds that allowed
by law; and, if the load is excessive, re-
quire the operator to reduce it to the
amount prescribed by the act.  It clearly
appears that this section of the statute
does not prohibit the use of motor vehicles
on the public highways, but is merely a
regulation of their use.  Therefore, if the
officer should have probable cause to be-
lieve that a motor vehicle is being operat-
ed without a permit, or that it is being
operated with an unlawful load, he would
have the right, without a search warrant,
to stop the driver and question him about
his right to operate a motor vehicle upon

the public highways, and, if need be, ascertain whether the operation of the motor vehicle is in violation of law; and if such driver is operating the motor vehicle in violation of law, arrest him without a warrant. To hold otherwise would render ineffective the reasonable and wholesome laws enacted for the protection of the public and the highways.'

"This court has held in Head v. State, 131 Tex. Cr. R. 96, 96 S. W. 2d 981, that the legislature has given the above mentioned powers as set forth in Art. 827a, Sec. 6, supra, to license and weight inspectors of the Highway Department only, and that a constable or other peace officer of the State has no such power. This opinion in the Head case was cited and followed by the Amarillo Court of Civil Appeals in the case of De Shong Motor Freight Lines, Inc. v. Hopkins, et al, 99 S. W. 2d 1033, where the freight lines were seeking an injunction against Hopkins, a deputy sheriff, who was weighing and causing to be weighed appellant's trucks for the purpose of ascertaining whether or not same were overloaded. It was therein held that such officer did not have that power, same having been lodged alone in such inspectors."

We call your particular attention to the following portion of Section 5a of Article 827a, supra, to wit:

"Such copy of the registration license receipt shall be displayed to any officer authorized to enforce this act."

Obviously, the officers authorized to enforce the act would have the authority to flag down or signal the operators of such vehicles to stop in order that such officers could have the opportunity to request the operator to display the registration receipt for such vehicle. We have concluded that Sections 5a and 6 of Article 827a, V. A. T. P. C., should be construed together and that the officers named in Section 6 are the officers authorized to enforce Section 5a.

Conference opinion No. 3058 of this department holds, among other things, that a constable is not entitled to a fee for summoning witnesses unless he actually summoned said witnesses.

We quote from opinion No. O-963 of this department as follows

"In answer to your questions (a) and (b) of Question No. 1, the determination of whether or not the motorist was under arrest by the constable depends upon the following issue of fact:

"'If the motorist had attempted to leave at the time the constable stopped him, would the constable have permitted him to leave?'

"You are respectfully advised that it is the opinion of this department that if the above question be answered in the negative, the motorist was under arrest. If the above question be answered in the affirmative, the motorist was not under arrest. You are further respectfully advised that it is the opinion of this department that if the above question be answered in the negative the driver was under arrest, regardless of whether or not the constable took the motorist's bond."

We quote from opinion No. O-2104 as follows:

"It is a question of fact as to whether or not the License and Weights Inspector arrested the truck driver at the time he stopped him and gave him a ticket. If the truck driver was arrested by the License and Weights Inspector it was the duty of the License and Weights Inspector to carry the truck driver before the nearest magistrate and this duty could not be performed by the giving of a 'ticket' unauthorized by law. If he did not arrest the truck driver there was no necessity or lawful reason for his attempted effort to require the truck driver to appear in court at a later date upon the pur-

ported authority of a 'ticket'. If the truck driver was arrested and released without authority of law, he would perhaps occupy the same status of 'an escaped prisoner'. But regardless of whether or not the truck driver was an 'escaped prisoner' if the constable executed a valid warrant of arrest legally issued by the Justice of the Peace by arresting said truck driver at a later date he would be entitled to an arrest fee and his proper mileage. If he executed valid subpoenas for witnesses in the case lawfully issued by the Justice of the Peace he would be entitled to his fees and mileage for executing such process."

We enclose herewith copies of said opinions for your information.

We respectfully call your attention to the following provisions of House Bill 20, 47th Legislature of Texas, known as the Driver's License Law, codified as Article 6687b, Vernon's Annotated Texas Civil Statutes, to wit:

"Section 1. Definition of words and phrases.

"(m) 'Operator.' Every person, other than a chauffeur or commercial operator, who is in actual physical control of a motor vehicle upon a highway.

"(n) 'Commercial operator.' Every person who is the driver of a motor vehicle designed or used for the transportation of property, including all vehicles used for delivery purposes, while said vehicle is being used for commercial or delivery purposes.

"(o) 'Chauffeur.' Every person who is the driver for wages, compensation, or for fare, of a motor vehicle transporting passengers.

". . .

Honorable J. C. Voyles, Page 15

"Section 13. License to be carried and
exhibited on demand.

"Every licensee shall have his operator's,
commercial operator's or chauffeur's license in
his immediate possession at all times when op-
erating a motor vehicle and shall display the
same, upon demand of a magistrate or any officer
of a court of competent jurisdiction or any
peace officer." (Underscoring ours)

Article 36, Vernon's Annotated Texas Code of Crim-
inal Procedure, reads as follows:

"The following are 'peace officers:' the
sheriff and his deputies, constable, the mar-
shal or policemen of an incorporated town or
city, the officers, non-commissioned offi-
cers and privates of the State ranger force,
and any private person specially appointed to
execute criminal process."

The case of Wilson v. State, (Texas Court of Crim-
inal Appeals) 36 S. W. (2d) 733, holds that a deputy constable
is a peace officer. This case holds that although deputy
constables are not named in Article 36, V. A. C. C. P., supra,
as peace officers, they are peace officers by virtue of
Article 6869½ Revised Civil Statutes of Texas.

We answer your questions as follows:

1. In your first question you refer to Section 5
of Article 827a, 1936. Undoubtedly, you mean to refer to
Section 5a, which was amended by the 47th Legislature. It
is our opinion that a constable, deputy constable and city
police officer do not have authority to stop a motor vehicle
for the purpose of demanding the motorist to display to
such officer the registration license receipt for such auto-
mobile required under Article 827a, Section 5a, supra, re-
gardless of whether or not such officer had probable cause
to believe that such motor vehicle or motorist had no such
registration papers. It is our further opinion that under
Section 5a, supra, the other officers named in your request,
to wit, sheriff, deputy sheriff and highway patrolman, would
have the authority to stop and request operators of the
vehicles named in the statute to show or display to such
officer the registration license receipt for such vehicle,

Honorable J. C. Voyles, Page 16

and it would not be necessary for such officers to have probable cause to believe that such motor vehicle or motorist had no such registration papers. If the motorist refused to display such registration papers to the sheriff, deputy sheriff or highway patrolman he would be subject to a fine and such refusal would, we think, in a proper case constitute probable cause authorizing such officer to search the vehicle. It is our further opinion that all peace officers, including the officers named in your request, to wit, sheriff, deputy sheriff, constable, deputy constable, city police officer and highway patrolman have the legal right to stop and request motorists to display to any of such officers, their operator's, commercial operator's or chauffeur's license, and it would not be necessary for such officers to have probable cause to believe that such motorists did not have such licenses. If the motorist refused to display such license or licenses to a peace officer and could not produce his license in court at his trial he would be subject to a fine and such refusal would, we think, in a proper case constitute probable cause authorizing such peace officer to search the motor vehicle. If a constable, deputy constable or city police officer should stop an operator of a commercial motor vehicle to demand the display of his commercial operator's license, and the operator produces his proper license such officer has no authority to demand that the operator display his registration papers required under Section 5a, supra, and would have no authority to search the operator's vehicle for such papers. Of course, such peace officers would also have authority to make such other searches and seizures upon probable cause as the law authorizes.

2. We agree with your answer to the second question.

3. We agree with your answer to the third question.

4. The answer to your fourth question will depend upon the facts as to whether or not an arrest was made by the officer under the rule laid down in opinion No. 0-963 and upon the further question as to whether the arrest without warrant was authorized by law. If the officer made an arrest for an offense under circumstances which the law authorized him to make without warrant he would be entitled to an arrest fee. If no arrest was made or if an illegal arrest was made no arrest fee would be due the officer.

5. In answer to your fifth question, it is our opinion under the facts stated that the officer would not be entitled to a witness fee, regardless of whether the arrest was legal or illegal. (We do not pass on the question of whether an arrest was made and if made, whether legal or illegal, as we do not have sufficient facts to pass on these questions.)

6. In answer to your sixth question it is our opinion that if the officer made a legal arrest without warrant he would have already earned his arrest fee and it would not be necessary to serve the defendant with a warrant in order to earn his fee. If the officer made no arrest or made an illegal arrest without warrant, he would, of course, not be entitled to an arrest fee; however, if he subsequently made a legal arrest he would be entitled to an arrest fee. He would, however, in no case be entitled to more than one arrest fee.

7. Your seventh question is rather broad and we do not have sufficient facts to pass on same. The innocence or guilt of each particular officer will depend upon all the facts and circumstances in each case.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Wm. J. Fanning
Assistant

APPROVED NOV 2, 1947

ASSISTANT
GENERAL

WJF:GO

ENCLOSURE


APPROVED
OPINION COMMITTEE
BY ___ CHAIRMAN